# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              CRIMINAL ACTION NO. 5:08-cr-00269

CHAD TALADA,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Indictment [Docket 24].  By Order entered February 25, 2009, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation (PF&R).  Magistrate Judge VanDervort filed his PF&R on April 17, 2009 [Docket 31].  In that filing, the magistrate judge recommended that this Court deny Defendant's motion to dismiss the indictment.  Objections to Magistrate Judge VanDervort's PF&R were due by May 4, 2009, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  Plaintiff timely filed objections on April 30, 2009.

### I.  BACKGROUND

The underlying facts of this case are uncontested.  On May 17, 2002, Defendant Chad Talada was convicted of attempted sexual abuse in the first degree.  On May 21, 2004, Defendant was convicted of possessing a sexual performance by a child less than sixteen years of age.  Both were felony convictions in Chemung County, New York.  Defendant was required to register as a sex offender and did so in the State of New York following each of his convictions.

In April of 2007, Defendant moved from New York to Beckley, West Virginia.  Defendant did not register as a sex offender in West Virginia until he was arrested by local law enforcement officers on June 26, 2008.  On December 10, 2008, a federal grand jury charged Defendant with failure to register as a sex offender in violation of 18 U.S.C. § 2250.  Defendant filed a motion to dismiss the indictment, challenging the constitutional and legal validity of the Sex Offender Registration and Notification Act (SORNA or the Act), 42 U.S.C. §§ 16901, *et seq*., 18 U.S.C. § 2250, and regulations promulgated pursuant to SORNA.

The PF&R provides a detailed description of the background and legislative history of SORNA.  In short, SORNA is Title I of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006), which was signed into law on July 27, 2006.  SORNA "establishes a comprehensive national system for the registration of [sex] offenders."[1]  42 U.S.C. § 16901.  Section 141(a) of SORNA, 18 U.S.C. § 2250(a), imposes a sentence of up to ten years of imprisonment for anyone who is required to register under SORNA, travels in interstate commerce, and knowingly fails to register as a sex offender in the new jurisdiction or update a registration as required by SORNA.[2]  Pursuant to Section 113, 42 U.S.C. § 16913,[3] SORNA's registration

---

[1]  Under SORNA, "the term 'sex offender' means an individual who was convicted of a sex offense."  42 U.S.C. § 16911.  Examples of sex offenses provided in 42 U.S.C. § 16911 include sex trafficking, coercion and enticement, transportation with intent to engage in criminal sexual activity, abusive sexual contact, use of a minor in a sexual performance, solicitation of a minor to practice prostitution, and production or distribution of child pornography.

[2]  Section 141(a) states:

Whoever--
(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration
(continued...)

2

[2](...continued)

and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.

[3]  Section 113 provides in full:

(a) In general-A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration-The sex offender shall initially register-(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current-A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section-

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the

(continued...)

provision, a sex offender is required to register in any state where the offender resides, is an employee, or is a student, as well as the jurisdiction of his conviction if different from his residence.

Congress did not determine whether SORNA would apply to offenders convicted prior to SORNA's effective date of July 27, 2006.  Rather, in Section 113(d), Congress assigned this determination to the Attorney General and authorized the Attorney General to promulgate regulations pertaining to the registration of sex offenders under SORNA.  On February 28, 2007, the Attorney General issued an interim rule stating:  "The requirements of the Sex Offender Registration and Notification Act apply to *all* sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."  28 C.F.R. § 72.3 (emphasis added).  Therefore, at the time of Defendant's indictment, sex offenders were required to comply with SORNA even if their convictions for sexual offenses occurred prior to the enactment of SORNA.  *See United States v. Hatcher*, 560 F.3d 222, 229 (4th Cir. 2009) (holding that SORNA's registration requirements did not apply to pre-SORNA offenders until after the Attorney General issued the interim rule specifying the applicability of SORNA's registration requirements to those

---

[3](...continued)
    registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

    (e) State penalty for failure to comply-Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

offenders); *see also United States v. Smith*, 528 F. Supp. 2d 615, 620 (S.D. W. Va. 2007) (Goodwin, C.J.).[4]

Since the enactment of SORNA, the constitutionality of the Act has been considered by various district courts and courts of appeal.  In the vast majority of courts, SORNA has withstood constitutional challenges.  However, neither the United States Supreme Court nor the Fourth Circuit has had occasion to provide guidance on the constitutional questions presented here.  *See Hatcher*, 560 F.3d at 223–24 (because SORNA's requirements did not apply to appellants at the time they failed to register under SORNA, the Fourth Circuit determined that it did not need to reach the constitutional questions presented by the appellants).[5]

---

[4]  As noted by Defendant, SORNA differs from West Virginia's Sex Offender Registration Act, W. Va. Code §§ 15-12-1, *et seq.*, in the following ways:

> 1.  SORNA requries the registration of a broader group of offenders for far less serious offenses,

> 2.  SORNA requires a registration period that is of longer duration than that under West Virginia law,

> 3.  SORNA only gives sex offenders three days to notify the appropriate authority of any change in employment, residence, etc. while West Virginia law gives such offenders 10 days, and

> 4.  SORNA requires authorities to post information about all sex offenders on the Internet, while West Virginia law requires posting information only about those sex offenders who are required to register for life.

(Docket 25 at 9.)

[5]  However, in *Smith v. Doe*, the United States Supreme Court found an act similar to SORNA, Alaska's Sex Offender Registration Act, to be constitutional.  538 U.S. 84, 92 (2002).

5

## II.  STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1)(C).  However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.  OBJECTIONS

Defendant makes six objections to the PF&R, each of which is addressed below.[6]

A.      *Objection to Finding that SORNA's Requirements Apply before Comprehensive Regulatory System is in Effect*

Defendant "objects to the legal conclusion that Congress may require sex offender registration of state sex offenders and punish those who cross state lines and fail to register *before the comprehensive regulatory system is in effect.*"  (Docket 32 at 1 (emphasis in original).) Defendant points out that as of the date of his indictment, neither West Virginia nor any other state was in compliance with SORNA's requirements.  The magistrate judge found that Defendant could

---

[6] Throughout his objections, Defendant refers the Court to sections of his Memorandum in Support of Motion to Dismiss Indictment [Docket 25].  These references comprise his entire argument for certain objections.  When a party makes objections that are so general or conclusory that they fail to direct the district court to any specific error by the magistrate judge, de novo review is unnecessary.  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *Howard's Yellow Cabs, Inc. v. United States*, 987 F. Supp. 469, 474 (W.D.N.C. 1997).  By simply referring the Court to entire sections of his original memorandum, Defendant fails to direct the court to any specific error by the magistrate judge.  However, because Defendant narrowed the issues to which he objects and, at times, provided additional argument, the Court will consider the portions of Defendant's memorandum to which he cites.

be charged under SORNA even though West Virginia has not fully implemented all SORNA standards.

As stated above, SORNA provides a "comprehensive set of minimum standards for sex offender registration and notification in the United States."  The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030-01, 38044 (July 2, 2008) (SMART guidelines).[7]  "Among other things, SORNA requires every state to maintain a sex offender registry conforming to SORNA's requirements; requires certain persons to register as sex offenders in each state where they reside, where they are employed, and where they are a student; and requires those persons to keep their registrations current."  *Hatcher*, 560 F.3d at 230 (citations omitted).  Section 124 of SORNA, 42 U.S.C. § 16924(a), sets a general time frame of three years for implementation, running from the date of the enactment of SORNA, July 27, 2006, and authorizes the Attorney General to provide up to two one-year extensions of this deadline.  As set forth in Section 125 of SORNA,  42 U.S.C. § 16925, "For any fiscal year after the end of the period for implementation, a jurisdiction that fails, as determined by the Attorney General, to substantially implement this subchapter shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction under [42 U.S.C. § 3750, *et seq.*]."[8]  However, nothing in SORNA or its

---

[7]  The Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (the SMART office), which was established by SORNA and is a component of the United States Department of Justice, published a set of Final Guidelines to interpret and implement the Sex Offender Registration and Notification Act.  The guidelines became effective on July 2, 2008.

[8]  It is undisputed that West Virginia had not implemented SORNA as of the time of Defendant's indictment.  In addition, nothing in the record indicates that West Virginia has implemented all SORNA requirements to date.  West Virginia has yet to establish any procedures or protocols for the collection, maintenance, and dissemination of the detailed information required by the Act.  Further, nothing in the record shows that West Virginia has "current electronic and cyber technology

(continued...)

guidelines indicates that a jurisdiction's failure to comply with SORNA relieves offenders of the obligation to register in that jurisdiction.

Instead, Congress instructed the Attorney General to "specify the applicability of the requirements of [the Act] to sex offenders convicted before [its enactment] *or its implementation in a particular jurisdiction*." 42 U.S.C. § 16913(d) (emphasis added). Thus, by this language Congress delegated two important decisions to the Attorney General. First, the Attorney General was to determine whether SORNA would apply to individuals whose sex offense convictions predated SORNA's enactment on July 27, 2006. Second, the Attorney General was to specify whether SORNA would apply to those convicted of sex offenses after SORNA's enactment but before its implementation in a particular state.

By stating that "[t]he requirements of the Sex Offender Registration and Notification Act apply to *all* sex offenders," 28 C.F.R. § 72.3 (emphasis added), the Attorney General announced that

---

[8](...continued)
to seamlessly track sex offenders who move from one jurisdiction to another," 73 Fed. Reg. at 38047.

8

offenders are required to register in jurisdictions where SORNA has not been implemented.[9]  *See United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008).

Other courts agree that SORNA's registration requirements apply even when a jurisdiction has not implemented all requirements under SORNA.  *See United States v. Stevens*, 578 F. Supp. 172, 181 (D. Me. 2008) (holding that SORNA imposes a general obligation to register regardless of whether the state implements the additional registration requirements of SORNA); *see also United States v. Waybright*, 561 F. Supp. 2d 1154, 1172 (D. Mont. 2008).  For example, the court in  *United States v. Gould* held that Maryland's failure to implement SORNA did not preclude a defendant's prosecution for failing to register as a sex offender under SORNA.  526 F. Supp. 2d 538, 542 (D. Md. 2007).  In *Gould*, the defendant "highlight[ed] the differences between SORNA and existing Maryland sex offender registration requirements and contend[ed] that Maryland did not have the infrastructure available for Gould to comply with SORNA."  *Id.*  In addition, the defendant asserted that "his failure to register under Maryland law had no bearing on his failure to register

---

[9]  Example number two of the Attorney General's interim rule supports this reading of the interim rule.  It states,

> A sex offender is convicted by a state jurisdiction in 1997 for molesting a child and is released following imprisonment in 2000. The sex offender initially registers as required, but disappears after a couple of years and does not register in any other jurisdiction. Following the enactment of the Sex Offender Registration and Notification Act, the sex offender is found to be living in another state and is arrested there. The sex offender has violated the requirement under the Sex Offender Registration and Notification Act to register in each state in which he resides, and could be held criminally liable under 18 U.S.C. § 2250 for the violation because he traveled in interstate commerce.

28 C.F.R. § 72.3.  Not only does this example clarify that "all sex offenders" includes those required to register in jurisdictions that have yet to implement SORNA regulatory scheme, but it is nearly identical to the facts of the case at hand.

under SORNA." *Id.* However, the district court rejected Gould's arguments. *Id.* The *Gould* court held that "although the obligations imposed under SORNA differ[ed] from those under Maryland law, the defendant had a duty to register his name and address with the Maryland authorities." *Id.* Finally, relying on proposed guidelines, the court determined that "Maryland's failure to implement SORNA does not preclude [the defendant's] prosecution under § 2250(a)." *Id.* (citing National Guidelines for Sex Offender Registration and Notification, Proposed Guidelines, 72 Fed. Reg. 30,210, 30,228 (May 30, 2007)).

The provision of the proposed guidelines cited by the *Gould* court, which was ultimately adopted, states, "SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA *or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs*." 73 Fed. Reg. at 38063 (emphasis added). Defendant claims that this language means that "*once a state implements SORNA*, the Act retroactively applies to offenders in that state who were convicted of their sex offenses before SORNA was enacted or implemented." (Docket 25 at 10.) [10] However, a straightforward reading of SORNA's guidelines

---

[10] Defendant also cites to the following portion of the guidelines:

> With respect to sex offenders with pre-SORNA or pre-SORNA-implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation—illustrated by the examples in the first and second bullets above—jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible.

73 Fed. Reg. 38063. Defendant claims that this provision means that "at least for offenders who have pre-SORNA implementation convictions and remain in prison, on parole, or registered as a sex offender have no duty to register under SORNA until "*the time of implementation*." (Docket 25 at 11 (emphasis in original).) Defendant's reading of this provision is incorrect. This provision is merely a direction to states that, to be in compliance with SORNA, they must immediately endeavor to register pre-SORNA and pre-SORNA implementation sex offenders.

indicates that programmatic compliance by a state cannot be a prerequisite for the registration requirements.  For these reasons, the Court **FINDS** that sex offenders are required to register under SORNA prior to the implementation of the comprehensive regulatory system in their state. Accordingly, Defendant's first objection is **OVERRULED**.[11]

      B.      *Objection to Finding that Application of SORNA Does Not Violate the Ex Post Facto Clause*

Defendant argues that as applied to him, SORNA violates the Ex Post Facto Clause.  Article I, Section 9, clause 3 of the United States Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const., art. I, § 9, cl. 3.  The Ex Post Facto Clause prohibits Congress from enacting a law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (citations omitted).

> It both enforces the principle that legislation is prospective, whereas punishment—the job assigned by the Constitution to the judicial branch—is retrospective, and gives people a minimal sense of control over their lives by guaranteeing that as long as they avoid an act in the future they can avoid punishment for something they did in the past, which cannot be altered.

*Dixon*, 551 F.3d at 584.

The Ex Post Facto Clause only applies to a law that is punitive.  *See Miller v. Florida*, 482 U.S. 423, 429 (1987).  Before a criminal law will "fall within the ex post facto prohibition, two critical elements must be present: first, the law 'must be retrospective, that is, it must apply to events

---

[11] In his first objection, Defendant also makes a passing reference to the Commerce Clause.  To the extent that the reference is an objection to the constitutionality of SORNA under the Commerce Clause, it is **OVERRULED**.  For a discussion on the constitutionality of SORNA under the Commerce Clause, see *United States v. Howell*, 552 F.3d 709 (8th Cir. 2009), and *Gould*, 526 F. Supp. 2d at 547.

occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" *Id.*
(citing *Weaver v. Graham*, 450 U.S. 24, 29 (1981)).

The Court understands Defendant to be making an ex post facto challenge to the registration requirements of SORNA as well as to the criminal penalties under SORNA for sex offenders who fail to comply.  First,

> [D]efendant objects to the legal conclusion that the application of SORNA's criminal provision, 18 U.S.C. § 2250, to [Defendant] does not violate the Ex Post Facto Clause. . . . [Defendant argues that] SORNA clearly has punitive consequences for convicted sex offenders beyond those which existed when [Defendant] suffered his sex offender convictions.  SORNA includes felony criminal penalties for first time offenders.

(Docket 32 at 2.)  In addition to addressing the criminal penalties found in § 2250, Defendant notes that SORNA "requires in-person reporting . . . .  It provides for nationwide [I]nternet dissemination of offender information.  It establishes a community notification provision."  By listing the registration requirements, Defendant appears to contend that 42 U.S.C. § 16913 violates the Ex Post Facto Clause as well.  The Court will address each of these arguments, beginning with Defendant's challenge to the registration and notification requirements.

### (1) Registration and Notification Requirements of SORNA Not Subject to Ex Post Facto Analysis

An ex post facto challenge to the registration and notification requirements of SORNA has been partially considered by another court in this district.  *See United States v. Stinson*, 507 F. Supp. 2d 560, 569 (S.D. W. Va. 2007) (Chambers, J.) (holding that the registration requirements established by SORNA do not generally violate the Ex Post Facto Clause).  However, neither the Fourth Circuit nor the United States Supreme Court has directly analyzed SORNA on this issue. Nevertheless, an ex post facto challenge to a sex offender registration act is not a novel issue.  In

12

*Smith v. Doe*, 538 U.S. 84 (2002), the Supreme Court provided an ex post facto framework in its analysis of Alaska's Sex Offender Registration Act (ASORA)[12] that leaves little room for doubt that SORNA is a civil scheme that is not subject to the Ex Post Facto Clause.

In *Smith*, individuals who were convicted of sex offenses prior to the enactment of ASORA challenged the registration and notification requirements of ASORA on ex post facto grounds.  The Supreme Court determined that ASORA was a nonpunitive, civil statute and, therefore, "its retroactive application [did] not violate the Ex Post Facto Clause." 538 U.S. at 105–06.  The Supreme Court explained that in determining whether a law violates the Ex Post Facto Clause, a court must first "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Id.* at 92 (quoting *Kansas v. Hendricks*, 521 U.S. 346 (1997)).  To do so, a court looks at the stated purpose of the statute as well as "the manner of its codification or the enforcement procedures it establishes." *Id.* at 93–94.  If the purpose of the statute is to impose punishment, the inquiry ends; however, if the purpose is to enact a civil and nonpunitive regulatory scheme, the court must decide if the scheme is "so punitive either in purpose or effect as to negate [the legislature's] intention to deem it civil." *Id.* (internal quotation marks and citations omitted).  The Supreme Court stated that absent "the clearest proof" that what has been denominated a civil remedy is actually a criminal penalty, a court should defer to the legislature's stated intent.  *Id.*  Applying this analysis, the Supreme Court determined that Alaska's Sex Offender Registration Act is regulatory instead of punitive and that its registration requirements were not a violation of the Ex Post Facto Clause.  *Id.*

---

[12] ASORA contained a registration requirement and a notification system.  In addition, it retroactively applied to those offenders previously convicted of sex or kidnaping offenses. *Smith*, 538 U.S. at 90.

In accordance with *Smith*, the Court must determine whether Congress intended to make SORNA a civil statutory scheme, and, if so, whether either the registration and notification requirements negate that intent.  In *Smith*, the Supreme Court cited various provisions of Alaska's Sex Offender Registration Act that were indicative of the Alaska Legislature's intent to create a civil regulatory scheme.  A comparison of the provisions cited in *Smith* to parallel provisions in SORNA supports the inference that Congress had the same purpose in mind when it enacted SORNA.

First, like the notification requirements set forth in ASORA that are codified in Alaska's Health, Safety, and Housing Code, the SORNA registration and notification requirements are codified at Title 42 of the United States Code, which is labeled "The Public Health and Welfare." *Compare* Alaska Stat. § 18.65.087 *with* 42 U.S.C. §§ 16901, *et seq*.  This classification of the registration and notification provisions suggests that Congress intended that SORNA be "a nonpunitive regulatory measure."  *See Smith*, 538 U.S. at 94.

In addition, much like the purpose of ASORA[13] SORNA's declaration of purpose states, "In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, Congress in this chapter establishes a comprehensive national system for the registration of those offenders."  42 U.S.C. §

---

[13]  The Supreme Court found that the objectives of the Alaskan act was provided in the purpose statement of the act:

> [T]he Alaska Legislature expressed the objective of the law in the statutory text itself. The legislature found that "sex offenders pose a high risk of reoffending," and identified "protecting the public from sex offenders" as the "primary governmental interest" of the law. 1994 Alaska Sess. Laws ch. 41, § 1. The legislature further determined that "release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety."  *Ibid.*

*Smith*, 538 U.S. at 93.

16901.  The purposes statement lends considerably to the notion that Congress intended SORNA to be a civil scheme.

Finally, like ASORA, the procedural mechanisms found in SORNA indicate that the purpose of SORNA was to establish a civil regime.  The *Smith* Court found,

> [ASORA] itself does not require the procedures adopted to contain any safeguards associated with the criminal process.  That leads us to infer that the legislature envisioned the Act's implementation to be civil and administrative.  By contemplating "distinctly civil procedures," the legislature "indicate[d] clearly that it intended a civil not criminal sanction."

538 U.S. at 96 (citations omitted).  Other than the criminal penalty section found in 18 U.S.C. § 2250, procedures under SORNA are civil and essentially involve registration requirements and the dissemination of information on the Internet.  *See* 42 U.S.C. §§ 16915, *et seq*.  Thus, the Court joins the majority of courts addressing this issue and **FINDS** that, based on SORNA's purpose statement, manner of codification, and procedural mechanisms for registration and notification, Congress intended SORNA to be a civil regime.  *See United States v. Romeo*, No. 5:08-cr-0694-GTS-1, 2009 WL 140422, at *3 (N.D. N.Y. Jan. 20, 2009) (reviewing the intent of Congress and holding, "This Court agrees with the view of the Eighth Circuit, as well as with the view of the majority of the district courts addressing the issue, that SORNA does not violate the Ex Post Facto Clause.")

The Court must next determine whether SORNA is "so punitive in purpose or effect as to negate Congress' intent to deem it civil."  *Smith*, 538 U.S. at 92.  In making this determination, the Court looks at the following factors: "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."  *Id.* at 97.  As Defendant points out, the

15

registration and notification requirements under SORNA require Internet dissemination of offenders' information, a community notification program, and in-person reporting.  Though there is stigma associated with the reporting requirements of SORNA, they are very similar to the requirements of ASORA.  In *Smith*, the Supreme Court found,

> [T]he Act's stigma results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. The fact that Alaska posts offender information on the Internet does not alter this conclusion. Second, the Act does not subject respondents to an affirmative disability or restraint. It imposes no physical restraint, and so does not resemble imprisonment, the paradigmatic affirmative disability or restraint . . . . Moreover, its obligations are less harsh than the sanctions of occupational debarment, which the Court has held to be nonpunitive.

*Id.* at 86.  As in *Smith*, "[i]t suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the Ex Post Facto Clause." *Id.* at 102.  Accordingly, the Court **FINDS** that the registration and notification requirements of SORNA are not so punitive in effect or intent to negate Congress' intent to make the Act civil. Therefore, the Court **FINDS** that SORNA is a civil regime that is not subject to an ex post facto analysis.

### (2) As Applied to Defendant, Criminal Penalties Do Not Violate Ex Post Facto Clause

While it is clear that the registration and notification provisions of SORNA do not fall under the Ex Post Facto Clause, it is equally apparent that the criminal provision found in § 2250, which exposes a sex offender to up to ten years of imprisonment for failure to register, is punitive in nature and subject to ex post facto analysis.[14]  However, to violate the Ex Post Facto Clause, the criminal

---

[14]  Defendant argues that because SORNA's regulatory scheme was not in effect in any state at the time of Defendant's indictment, "[t]here was no regulatory scheme to save the punitive aspects of the statute from ex post facto invalidity."  (Docket 32 at 3.)  Defendant claims,

(continued...)

16

penalties must be applied retroactively.  As stated above, "[t]o fall within the ex post facto prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime."  *United States v. Mitchell*, 209 F.3d 319, 321 (4th Cir. 2000).  To be retrospective, every element of the offense must occur before the enactment of the statute or, as in this case, when the statute is made applicable to a defendant.  *See id.*

In *Mitchell*, the Fourth Circuit found that 18 U.S.C. § 922(g)(9), which makes it unlawful for a person convicted of a misdemeanor crime of domestic violence to possess a firearm, did not violate the Ex Post Facto Clause.  *Id.* at 322.  The Court of Appeals reasoned that it was "immaterial that [the defendant's] firearm purchase and domestic violence conviction occurred prior to § 922(g)(9)'s enactment because the conduct prohibited by § 922(g)(9) is the *possession* of a firearm."  *Id.* (emphasis in original).  In other words, the defendant's post-enactment firearm possession, as

---

[14](...continued)

> Using the more severe provisions to punish offenders who fail to register or keep their registration current before the regulatory provisions of SORNA are effective renders those provisions purely punitive.  They are not yet part of a comprehensive regulatory scheme.  When the regulatory provisions are in effect, when West Virginia is in compliance with SORNA's requirements, the punitive aspects of SORNA may be enforced without violating the Ex Post Facto clause.

(*Id.*)  Defendant has cited no authority in support of his argument, and this Court's research has revealed none.  Rather, the Court has found that the "majority of our sister courts have rejected the argument."  *Romeo*, 2009 WL 140422, at *3 (holding "the fact that states have not yet met their SORNA obligations is irrelevant to the obligations of a sex offender to comply with SORNA") (citations omitted); *see also United States v. Robinson*, No. 1:08-cr-76, 2008 WL 3895597, at *3 (E.D. Va. Aug. 19, 2008).  However, the Court need not reach this issue as it has already found that the criminal penalties provided in SORNA are punitive in nature, and thus, even when the comprehensive regulatory scheme is implemented in West Virginia, the application of SORNA to a particular defendant could amount to an ex post facto violation in certain factual situations.

17

opposed to his pre-enactment possession, constituted the final element required for a violation of 18 U.S.C. § 922(g)(9). *See id.* at 322–23. Therefore, there was no ex post facto violation. *Id.*

In this instance, the argument against an ex post facto violation is even stronger than in *Mitchell* because Defendant committed two out of three elements necessary for a SORNA violation after SORNA became applicable to him. A conviction under SORNA requires proof of the following: "(1) that the defendant is required [by reason of a sex offense conviction] to register under SORNA; (2) that the defendant travels in interstate commerce; and (3) that the defendant knowingly fails to register or update a registration as required by the Act." *Stinson*, 507 F. Supp. 2d at 566. .

Defendant was convicted of sex offenses in 2002 and 2004. Therefore, the first SORNA element in Defendant's case occurred prior to the enactment of SORNA. However, a prior conviction alone does not violate SORNA. A violation of SORNA does not occur until the offender arrives in a new state and fails to timely register as a sex offender under SORNA. It is undisputed that Defendant traveled to West Virginia and failed to timely register in April of 2007. Therefore, the last two elements of Defendant's alleged SORNA violation did not occur until after SORNA was made applicable to Defendant on February 28, 2007—the date the Attorney General issued the interim rule making SORNA applicable to pre-SORNA sex offenders. Thus, the Court **FINDS** that as applied to Defendant, SORNA does not violate the Ex Post Facto Clause. [15]

\* \* \*

---

[15] The Court need not determine whether SORNA disadvantages Defendant because it has found that SORNA is not retrospective as applied to Defendant.

Two circuit court opinions support, at least somewhat, the conclusions of this Court, and are worth mentioning.

In *United States v. May*, the defendant's sex offense conviction occurred prior to SORNA, and his travel and failure to register occurred in November of 2006. 535 F.3d 912, 914-15 (8th Cir. 2008). Thus, May fell within the gap between the enactment of SORNA and the Attorney General's interim rule. The Eighth Circuit first found that the Attorney General's interim rule did not apply to May, and therefore, SORNA was applicable to him upon enactment. *See id.* at 915-19. The *May* court then conducted an Ex Post Facto analysis in which criminal penalties, civil schemes under *Smith v. Doe*, and criminal elements are all mixed together in a manner that defies clarity. *See id.* at 919-20. However, the Eighth Circuit appears to conclude that because the elements of travel and failure to register occurred after SORNA's enactment, May's prosecution under the criminal provisions of SORNA survives the Ex Post Facto challenge. *Id.* at 920. Aside from using the date of the enactment of SORNA, rather than the date of the Attorney General's interim rule,[16] the ultimate Ex Post Facto analysis in *May* is basically the same as this Court's in the instant case. Of course, one is left to wonder what role *Smith v. Doe* could have played in that conclusion.

In *United States v. Hinckley*, the defendant also had a sex offense conviction that predated SORNA, and also traveled and failed to register between the enactment of SORNA and the interim rule. 550 F.3d 926, 928 (10th Cir. 2008). Relying on *May*, the Tenth Circuit first concluded that, despite the fact that all facts underlying the defendant's conviction took place before the interim

---

[16]   As mentioned *supra* at Part I, the Fourth Circuit has already determined that SORNA's registration requirements did not apply to pre-SORNA offenders until the Attorney General issued interim rule specifying the applicability of SORNA's registration requirements to those offenders. *See Hatcher*, 560 U.S. at 226.

rule, SORNA was applicable to prior sex offenders upon enactment in July of 2006. *See id.* at 929-35.

The Tenth Circuit correctly separated the Ex Post Facto analysis of the criminal penalties of SORNA and its registration requirements. The *Hinckley* court then found that the criminal prosecution of that defendant under SORNA did not violate the Ex Post Facto clause. *Id.* at 936. However, Hinckley's travel had occurred on a regular basis prior to the enactment of SORNA, as well as after, and the court focused on the continuing nature of the offense. *See id.* at 936. Because both the facts and the analysis in *Hinckley* are significantly different from the instant case, the discussion in *Hinckley* regarding the application of the Ex Post Facto clause to a criminal prosecution is of little use for this case.

However, the discussion of the registration requirements of SORNA in *Hinckley* are more useful. The Tenth Circuit applied the *Smith v. Doe* analysis to SORNA and reached the same conclusion regarding SORNA that the Supreme Court did regarding ASORA. *See id.* at 937-38. With regard to the registration requirements, the *Hinckley* court stated: "[SORNA]'s primary effect supports Congress's intention that it operate as a civil regulatory scheme designed to protect the general public welfare." *Id.* at 938. The Tenth Circuit concluded that the registration requirements of SORNA, although they are accompanied by criminal penalties, are not subject to Ex Post Facto analysis because they are part of a civil regulatory scheme falling under *Smith v. Doe*. *Id.* at 937-38.

To summarize, Defendant's Ex Post Facto challenges to the requirement that he register under SORNA and to his criminal prosecution under that Act are entirely separate. Applying *Smith v. Doe* to SORNA, the Court concludes that the registration and notification requirements are part of a civil regulatory scheme, and therefore not subject to the Ex Post Facto Clause. Separately, the

Court concludes that because Defendant traveled and failed to register after both the enactment of SORNA and the Attorney General's interim rule, his prosecution does not violate the Ex Post Facto clause.  Accordingly, Defendant's second objection is **OVERRULED**.

        *C.*     *Objection to Finding that SORNA Became Effective upon Its Enactment*

Defendant "objects to the legal conclusion that 'SORNA became effective immediately upon its enactment.'"  (Docket 32 at 3 (citing Docket 31 at 23).)  Defendant argues that though "SORNA was signed into law on July 27, 2006, its requirements can only be effectuated through the states." (Docket 25 at 8.)  Defendant contends that West Virginia has not implemented SORNA because it has not carried out the requirements of SORNA as explained in the guidelines and because the SMART Office has yet to determine that West Virginia is in compliance pursuant to 73 Fed. Reg. at 38047.  (Docket 25 at 8.)

Defendant's third objection is essentially another way of phrasing his first objection.  As discussed *supra* at Part III.A., the registration requirements under SORNA apply prior to particular jurisdictions' incorporation of the SORNA requirements into their programs.  Furthermore, also as discussed *supra* at Part I, the Fourth Circuit recently determined that SORNA's registration requirements were in effect upon its enactment for those who were convicted of a sex offense post-SORNA, and that the registration requirements under SORNA were made effective for pre-SORNA offenders on February 28, 2007, the date the Attorney General issued the relevant interim rule.  *See Hatcher*, 560 F.3d at 229.  Accordingly, Defendant's third objection is **OVERRULED**.

        *D.*     *Objection to Finding that Delegation to Attorney General Did Not Violate the Non-delegation Doctrine*

Defendant "objects to the legal conclusion that Congress' standardless delegation to the Attorney General of the authority to determine the application of SORNA to those convicted before

its effective date [is permissible]." (Docket 32 at 4 (citing Docket 31 at 24-25).) As Defendant

claims, "[w]hen Congress enacted the Adam Walsh Act, it did not state how and the extent to which

its provisions were to have retrospective application." (Docket 25 at 23.) Defendant explains,

> By its terms, SORNA clearly applies to persons who are convicted after July 27,
> 2006; the statute is silent as to others except to say that the Attorney General has "the
> authority" to specify the applicability of SORNA, if any, to sex offenders who are
> convicted before July 27, 2006, who are convicted before SORNA's implementation
> in a particular jurisdiction, and "to prescribe rules for the registration of any such sex
> offenders and for other categories of sex offenders" who are unable to comply with
> the initial registration requirements.

(*Id.* (citations omitted).) Defendant argues that because Congress did not provide further guidance,

it violated the constitutional separation of powers and non-delegation doctrines.

Under the non-delegation doctrine, Congress "is not permitted to abdicate or transfer to

others the legislative functions with which it is [constitutionally] vested." *Panama Ref. Co. v. Ryan*,

293 U.S. 388, 421 (1935). However, the non-delegation doctrine does not keep Congress from

obtaining the assistance of its coordinate branches. *Mistretta v. United States*, 488 U.S. 361, 372–73

(1989). Instead, it merely requires Congress to provide clear guidance and delineate the boundaries

of delegated authority. *Id.* So long as "Congress shall lay down by legislative act an intelligible

principle to which the person or body authorized to [exercise the delegated authority] is directed to

conform, such legislative action is not a forbidden delegation of legislative power." *J.W. Hampton*,

*Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

Again, the majority of courts that have reviewed this argument have found that SORNA's

delegation of authority to the Attorney General was constitutional. *See United States v. Barner*, No.

1:09-CR-005, 2009 WL 819385, at *12 (N.D. N.Y. Mar. 27, 2009) ("[T]he Court adopts the

majority view and finds that SORNA does not violate the non-delegation doctrine."). Specifically, the Eleventh Circuit held in an unpublished opinion,

> We are satisfied that Congress has provided the Attorney General with "intelligible principles" in the Sex Offender Registration and Notification Act. Congress has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d); and it has made a series of legislative judgments in §§ 16911, 16913, 16914 and 2250 that constrict the Attorney General's discretion to a narrow and defined category.

*United States v. Ambert*, No. 08-13139, 2009 WL 564577, at *8 (11th Cir. Mar. 6, 2009). Similarly, when presented with a non-delegation argument, a Maryland district court held that the defendant had "not demonstrated that Congress's delegation of authority to the Attorney General violated the nondelegation doctrine." *Gould*, 526 F. Supp. 2d at 545. The *Gould* court found that determining the retroactivity of sexual offenders' registration requirements was "not entirely new ground for the DOJ, as the Attorney General had previously been tasked with enforcing SORNA's predecessor offender statute. . . . Given the DOJ's prior experience with statutes of this kind, this direction is sufficiently intelligible and does not violate the nondelegation doctrine." *Id.* at 545–46 (citing Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071).

This Court agrees with the analysis of the *Ambert* and *Gould* courts. Furthermore, as noted by Magistrate Judge VanDervort, prior to permitting the Attorney General to exercise his discretion under § 16913(d), Congress provided that its purpose in enacting SORNA was to protect the public from sex offenders, which was an additional form of guidance. The Attorney General's exercise of this authority maximized the application of SORNA—he could legally do no more in this context to accomplish that purpose. Thus, the Court **FINDS** that by providing both the purpose of SORNA and the policy framework, and given the expertise of the Department of Justice, Congress provided

sufficient guidance for the delegation to be valid under the non-delegation doctrine.  Accordingly,

Defendant's fourth objection is **OVERRULED**.

E.      *Objection to Finding that the Attorney General's Interim Rule Issued on February*
        *28, 2007, Complied with the Requirements of the Administrative Procedures Act*

Defendant "objects to the legal conclusion that issuance of the Attorney General's February

28, 2007, interim rule complied with the requirements of the Administrative Procedures Act."

(Docket 32 at 4 (citing Docket 31 at 25–26).)  Defendant argues that the Attorney General violated

the Administrative Procedures Act by retroactively applying SORNA to those convicted before

SORNA was enacted without a notice and comment period.  Furthermore, Defendant argues that the

Attorney General's reliance on the "good cause" exception to the notice and comment period is

misplaced.

A porting of the Administrative Procedures Act, 5 U.S.C. § 553, addresses rule-making by

agencies.  Subsection (d) of § 553 provides that thirty days prior to the effective date of a rule,

publication and service must be effectuated. 5 U.S.C. § 553(d).  However, this subsection does not

apply when the agency "for good cause" finds and explains in a brief statement that notice and the

public procedure thereon are impracticable, unnecessary, or contrary to the public interest.  5 U .S.C.

§ 553(b)(3)(B).  "The notice and comment requirement could be deemed contrary to the public

interest if it impedes timely implementation of a statute as specifically required by that statute."

*United States v. Santana*, 584 F. Supp. 2d 941, 954 (W.D. Tex. 2008).

In considering a challenge to the Attorney General's interim rule at issue here, the court in

*Santana* considered the Attorney General's use of the public interest prong of § 553(b) as

justification for foregoing the thirty-day notice and comment period.  *Id.* at 955 (citing Applicability

of SORNA, 72 Fed. Reg. at 8896–97 (Feb. 28, 2007)).

24

> Specifically, the Attorney General explained that any '[d]elay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions.' . . . Further, the Attorney General cautioned that delaying implementation of the rule could result in 'the commission of additional sexual assaults . . . that could have been prevented had local authorities and the community been aware of [the sex offenders'] presence."

*Id.* After considering the Attorney General's reasons for bypassing the thirty-day notice and comment period, the *Santana* court found "that the Attorney General's explanation satisfie[d] the public interest prong of the good cause exception." *Id*; *see also Gould*, 526 F. Supp. 2d at 546 ("The DOJ's valid concern for public safety, legal certainty, and swift implementation of the rule was adequately justified in its interim order.").

Defendant argues that a thirty-day "waiting period could not have delayed registrations or impeded the functioning of law enforcement agencies [because] the states are not obligated to comply with SORNA until at least 2009." (Docket 25 at 29.) The Court is unpersuaded by Defendant's argument largely because it is based on a rejected premise. As stated previously, SORNA's registration requirements mandate that sex offenders who have traveled interstate register in the communities in which the work, reside, and attend school regardless of whether a state has implemented SORNA in full. Thus, requiring the immediate registration of sex offenders serves the important purposes identified by the Attorney General. Therefore, the Court **FINDS** that the Attorney General demonstrated good cause for foregoing the thirty-day waiting period. Accordingly, Defendant's fifth objection is **OVERRULED**.

> F.    *Objection to the Conclusion that Interim Rule is Valid Though it Does Not Provide for Notifying Pre-SORNA Sex Offenders of Obligations Imposed Upon Them*

Defendant "objects to the legal conclusion that the interim rule is valid even though it does not provide for notifying pre-SORNA sex offenders of the requirements imposed upon them by

SORNA."  (Docket 32 at 5.)  Defendant claims that "Congress wanted to assure compliance from [pre-SORNA sexual offenders] . . . .  Thus, it required the Attorney General to prescribe rules for notification of sex offenders whose convictions (or at least whose release from prison) occurred before July 27, 2006."  (Docket 25 at 32.)  Furthermore, Defendant maintains that the Attorney General provided no rules regarding notice to pre-SORNA sex offenders, making the interim rule invalid.  The Government counters by asserting that Defendant had notice of his duty to register based on his obligations under West Virginia state law.  In addition, the Government contends that "[a]ny change to the statutory scheme that occurred because of the Attorney General's interim regulation had no impact on the defendant."  (Docket 27 at 31.)

In *Gould*, the court considered the same argument and concluded that "prior knowledge of a duty to register under state law qualified as effective notice under SORNA."  526 F. Supp. 2d at 544.  In addition, in *United States v. Hinckley*, the Tenth Circuit determined that because the defendant's arrest for failing to register as a sex offender occurred well after SORNA's enactment, it "preseme[d] that he was aware of the law."  550 F.3d 926, 938–39 (10th Cir. 2008) (citing *Cheek v. United States*, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law . . . is no defense to criminal prosecution is deeply rooted in the American legal system.")).  Relying on *Gould* and *Hinckley*, as well as *May*, 535 F.3d at 921, the magistrate judge determined that "Defendant therefore had sufficient notice of his obligation to register as a sex offender under State law." (Docket 31 at 26.)

Under 42 U.S.C. § 16917, the duty to notify sex offenders of registration requirements is as follows:

(a) In general

An appropriate official shall, shortly before release of the sex offender from custody, or, if the sex offender is not in custody, immediately after the sentencing of the sex offender, for the offense giving rise to the duty to register–

> (1) inform the sex offender of the duties of a sex offender under this subchapter and explain those duties;
>
> (2) require the sex offender to read and sign a form stating that the duty to register has been explained and that the sex offender understands the registration requirement; and
>
> (3) ensure that the sex offender is registered.

(b) Notification of sex offenders who cannot comply with subsection (a) of this section

The Attorney General shall prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) of this section.

42 U.S.C. § 16917.

The Court agrees with Defendant that under 42 U.S.C. § 16917, Congress mandated that the Attorney General prescribe rules for the notification of pre-SORNA sexual offenders. However, the Attorney General's failure to do so does not eliminate Defendant's duty to register as a sex offender pursuant to SORNA. As the *Gould* and *Hinckley* courts found, because Defendant's failure to register occurred after the enactment of SORNA and after the Attorney General issued the interim rule, he was presumed to know the law. Furthermore, even if Defendant was unaware of the law, his ignorance would not excuse him of his requirement to register under SORNA because at the very minimum he knew, or was at least presumed to know, that he was required to register as a sex offender under West Virginia State law. *See, May*, 535 F.3d at 921.[17] Therefore, Defendant's due

---

[17] In *May* the court outlined the *Lambert* exception to the "ignorance of the law is no excuse"

(continued...)

process rights were not violated by the Attorney General's failure to promulgate notification rules. As such, Defendant's last objection is **OVERRULED**.

## IV. CONCLUSION

In accordance with the above findings, the Court **OVERRULES** Defendant's Objections [Docket 32], **ADOPTS** Magistrate Judge VanDervort's PF&R [Docket 31], and **DENIES** Defendant's Motion to Dismiss Indictment [Docket 24].

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney and the United States Probation Office.  The Court **DIRECTS** the Clerk to publish this opinion on the Court's website at http://www.wvsd.uscourts.gov.


ENTER:        June 5, 2009


————————————————————
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[17](...continued)
maxim.  535 F.3d at 921(citing *Lambert v. California*, 355 U.S. 225, 228-29 (1957)).  "An exception to the ignorance of the law is no excuse rule may exist if (1) the defendant's conduct was wholly passive, (2) the defendant is not per se blameworthy, and (3) there was an absence of circumstances alerting the defendant of the consequences of the deed."  *Id.*  The *May* court determined that because the defendant knew he had an obligation to register under state law, he did not qualify for the exception to the "ignorance of the law is no excuse" maxim.